**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRICK DEMARC SAMPSON,

      Petitioner,

vs.

MIKES KNOWLES, Warden,

      Respondent.

No. C 05-3825 PJH (PR)

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS; RULINGS**

This is a habeas case filed pro se by a state prisoner. Respondent has moved to dismiss the petition on grounds that it is barred by the statute of limitations. Petitioner has resisted the motion and the time for respondent to reply has passed, so it is now ready for ruling. Also before the court for ruling are several motions by petitioner.

**DISCUSSION**

*1. Petitioner's motions for appointment of counsel*

The right to counsel provided in the Sixth Amendment does not apply in habeas corpus actions. *Knaubert v. Goldsmith*, 791 F.2d 722, 728 (9th Cir. 1986). However, 18 U.S.C. § 3006A(a)(2)(B) authorizes appointment of counsel to represent a habeas petitioner whenever "the court determines that the interests of justice so require and such person is financially unable to obtain representation." The decision to appoint counsel is committed to the discretion of the district court. *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986).

Petitioner has presented his claims adequately in the petition, and has done a good job opposing the motion to dismiss, given the facts he has to work with. The interests of justice do not require appointment of counsel. The motions for appointment of counsel will

be denied.

   *2. Petitioner's other motions*

Petitioner moves for leave to amend his petition to add a claim. Because no responsive pleading had been filed when he filed his amendment, it is an amendment as of right. *See* Fed. R.Civ.P. 15(a). The motion will be denied as unnecessary.

Petitioner's "Motion for Relief from Default" refers to his "default" of not filing the petition on time, that is, it is his opposition to the motion to dismiss. As a motion, it will be denied.

As to petitioner's motion for entry of default against respondent, respondent's motion for an extension of time was granted and the motion to dismiss filed within the time as extended, so the motion for default will be denied.

   *3. Motion to dismiss*

      *a. Basic calculation*

The statute of limitations is codified at 28 U.S.C. § 2244(d). Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which: (1) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1). Time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the one-year time limit. *Id.* § 2244(d)(2).

Petitioner's conviction became final on September 10, 2002. His federal petition therefore was due by September 10, 2003, absent tolling or a different starting date for the limitations period. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying "anniversary method" to habeas limitations period; absent any tolling, the expiration date of

the limitation period will be the same date as the triggering event but in the following year). His first state habeas petition was filed on May 25, 2003, about eight months after the limitations period began running. This stopped the clock until the last petition was denied by the California Supreme Court on September 29, 2004. This federal petition was not filed until August 3, 2005, about ten months after tolling ended. These dates are not disputed by petitioner.

With eight months of the period having been used before petitioner started state collateral proceedings, and ten months having passed after completion of them before the petition was filed, this petition is clearly untimely, absent other considerations.

Petitioner contends in his opposition that he was so caught up in investigations he was undertaking to support the claims he raised in the petition that he "must have lost time," and that he was not abusing the legal system by his delay. This may be an attempt to claim equitable tolling.

### *b. Equitable tolling*

The one-year limitation period can be equitably tolled because § 2244(d) is a statute of limitations and not a jurisdictional bar. *Calderon v. United States District Court (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled in part on other grounds by Calderon v. United States District Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc). Equitable tolling will not be available in most cases because extensions of time should be granted only if "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Beeler*, 128 F.3d at 1288 (citation and internal quotation marks omitted).

The petitioner bears the burden of showing that this "extraordinary exclusion" should apply to him. *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002). He must establish two elements in order to be granted equitable tolling: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005)). The prisoner also must show that "the 'extraordinary circumstances' were the cause of his untimeliness." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

3

Petitioner's contention that he was so absorbed in his investigation that he just lost track of time is far from meeting these stringent requirements. Equitable tolling does not apply. *See Beeler*, 128 F.3d 1283 at 1288-89 (stating that equitable tolling "will not be available in most cases" and expressing confidence that district courts will "take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle ["extraordinary circumstances"] is surmounted.").

       *c. Actual innocence*

Petitioner also contends that he is "actually innocent." The Ninth Circuit has stated in dictum that the actual innocence gateway established in *Schlup v. Delo*, 513 U.S. 298 (1995), may be available to a petitioner whose petition is otherwise barred by AEDPA's limitations period. *See Majoy v. Roe*, 296 F.3d 770, 776-77 (9th Cir. 2002) (implying that unavailability of actual innocence gateway would raise serious constitutional concerns and remanding to district court for a determination of whether actual innocence claim was established before deciding whether gateway is available under AEDPA).

The "actual innocence" or "miscarriage of justice" exception arose in the context of procedural bars: If a state prisoner cannot meet the cause and prejudice standard to escape a procedural bar, a federal court may still hear the merits of the successive, abusive or procedurally defaulted claims if failure to hear the claims would constitute a "miscarriage of justice." *Sawyer v. Whitley*, 505 U.S. 333, 339-340 (1992) (citations omitted); *see also Majoy*, 296 F.3d at 776-77. In the traditional understanding of habeas corpus, a "miscarriage of justice" occurs whenever a conviction or sentence is secured in violation of a constitutional right. *See Smith v. Murray*, 477 U.S. at 543-44. However, the Supreme Court limits the "miscarriage of justice" exception to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing *Murray v. Carrier*, 477 U.S. at 496); *see, e.g., Wildman v. Johnson*, 261 F.3d 832, 842-43 (9th Cir. 2001) (petitioner must establish factual innocence in order to show that a fundamental miscarriage of justice would result from application of procedural default). Under this

4

exception, a petitioner may establish a procedural "gateway" permitting review of defaulted claims if he or she demonstrates "actual innocence." *Schlup*, 513 U.S. at 316 & n.32. Thus,

> [i]f a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claim.

*Id.* at 316.

"To be credible, such an actual innocence claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup*, 513 U.S. at 324. The "new" evidence need not be newly available, just newly presented -- that is, evidence that was not presented at trial. *Griffin v. Johnson*, 350 F.3d 956, 961 (9th Cir. 2003).

It is not enough that the new evidence show the existence of reasonable doubt; rather, petitioner must show "that it is more likely than not that no 'reasonable juror' would have convicted him." *Schlup*, 513 U.S. at 329. As the Ninth Circuit has stated, "the test is whether, with the new evidence, it is more likely than not that no reasonable juror would have found [p]etitioner guilty." *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001). Thus, "actual innocence" means factual innocence, not merely legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (citing *Sawyer*, 505 U.S. at 339).

A petitioner need not always affirmatively show physical evidence that he or she did not commit the crime. *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002). A petitioner may pass through the *Schlup* gateway by producing evidence "that significantly undermines or impeaches the credibility of witnesses presented at trial, if all the evidence, including new evidence, makes it 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup*, 513 U.S. at 327).

Petitioner contends that he has always asserted his innocence and presents a conclusory claim that the facts alleged in the petition show that he is indeed actually

5

1 innocent. The allegations of the petition are, of course, not proof of anything. This is far
2 from meeting the demanding standard set out above. The actual innocence exception,
3 assuming it exists, does not apply.

         *d. Starting date for limitations period*

Petitioner also refers to newly discovered evidence uncovered in the investigation which led to his supplemental petition filed on May 25, 2006. This might be an attempt to claim that as to the issue in the supplemental petition the limitations period should not have begun running until the evidence was discovered. One of the possible starting dates for the limitations period provided in the statute is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See* 28 U.S.C. § 2244(d)(1)(D).

The claim petitioner raises in the supplemental petition is that defense counsel was ineffective in waiving his right to be present at an in camera review of possibly impeaching materials from the arresting officer's personnel file. Petitioner has completely failed to establish that he exercised due diligence to discover this fact; indeed, he provides no information except that he did not discover it until May 12, 2006. Obviously, this does not go to whether he was diligent in attempting to discover it.

The supplemental petition also contains a reference to "new evidence." In a section headed "Exhibits B" on the last page of the supplemental petition, petitioner refers to an attached copy of a newspaper story which appeared in the San Jose Mercury News contending that many persons had been convicted in cases where the prosecutor misstated the law or the evidence. The exhibit includes a page of the story listing defendants in whose cases the paper says there was "questionable conduct," and the list includes petitioner.

Even if he intended to add this as a separate claim in this proceeding, which is by no means clear, petitioner has not established due diligence – he presumably was present at the trial, and therefore knows what the prosecutor did or did not do before the jury. This court also notes that several claims of prosecutorial misconduct were raised in petitioner's

6

direct appeal, and that the California Court of Appeal concluded that the prosecutor committed misconduct but that it was not prejudicial. *See People v. Sampson*, 2002 WL 462279 at *12-16 (Cal. App. 2002). This may well be the misconduct to which the newspaper article refers; it simply is not possible to tell, because the copies provided by petitioner do not contain any discussion of his case. If the newspaper story is a reference to the same misconduct, petitioner obviously was aware of it long before May 12, 2006.

Petitioner has failed to show that a starting date for the limitations period other than completion of direct review should apply.

## CONCLUSION

Petitioner's motion for leave to amend was filed before a responsive pleading, so is an amendment as of right. His motion (document number 7 on the docket) is **DENIED** as unnecessary. His motions for appointment of counsel (documents 8 and 10) and for entry of default (document 13) are **DENIED** for the reasons set out above. His motion for relief from default (document 21) is actually his opposition to the motion to dismiss; considered as a motion, it is **DENIED**.

Respondent's motion to dismiss (document 18) is **GRANTED**. The petition is **DISMISSED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 13, 2007.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.05\SAMPSON825.DSM

7